UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

|  |  |  |
|---|---|---|
| HALO ELECTRONICS, INC., | ) | |
| Plaintiff, | ) | 2:07-cv-00331-PMP-PAL |
| v. | ) | |
| PULSE ELECTRONICS, INC. and PULSE ELECTRONICS CORPORATION, | ) | **ORDER** |
| Defendants. | ) | |

Presently before the Court is Defendants Pulse Electronics, Inc. and Pulse Electronics Corporation's (collectively "Pulse") Renewed Motion for Judgment as a Matter of Law (Doc. #535), filed on June 25, 2013. Plaintiff Halo Electronics, Inc. ("Halo") filed a Response (Doc. #545) on July 9, 2013. Pulse filed a Reply (Doc. #550) on July 16, 2013.

Also before the Court is Pulse's Motion for a New Trial (Doc. #534), filed on June 25, 2013. Halo filed a Response (Doc. #546) on July 9, 2013. Pulse filed a Reply (Doc. #549) on July 16, 2013.

The parties are familiar with the facts of this case and the Court will not repeat them here except as necessary. This patent infringement case was tried before a jury beginning on November 6, 2012. (Mins. of Proceedings (Doc. #427).) At the close of Halo's case-in-chief, Pulse filed a Motion for Judgment as a Matter of Law on the issues of infringement, induced infringement, and willfulness. (Def.'s Mot. for J. as a Matter of Law

of Non-Infringement, No Induced Infringement, and No Willfulness (Doc. #444); Jury Trial Tr. - Day 6 (Doc. #465) at 5-6, 15-16.)

On November 26, 2012, the jury returned a verdict in Halo's favor. (Jury Verdict (Doc. #482).) The Court denied Pulse's Motion for Judgment as a Matter of Law on March 11, 2013. (Order (Doc. #519).) The Court entered Findings of Fact and Conclusions of Law on the remaining legal and equitable issues on May 28, 2013. (Order (Doc. #522).) Following entry of the Court's Findings of Fact and Conclusions of Law, the Court entered Judgment in Halo's favor. (J. (Doc. #523).) The Court also granted Halo a permanent injunction against Pulse. (Order (Doc. #528); Permanent Inj. (Doc. #529).)

Pulse filed a Notice of Appeal, which the United States Court of Appeals for the Federal Circuit deactivated upon Pulse filing its post-judgment Motions that are the subject of this Order. (Notice of Appeal (Doc. #531); Order (Doc. #541); Notice to Originating Tribunal (Doc. #542).) The Court has stayed enforcement of the permanent injunction until October 15, 2013. (Order (Doc. #551).) The Court also has stayed enforcement of the Judgment until the Court rules on Pulse's Motions that are the subject of this Order. (Order (Doc. #551).)

## I. RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW (DOC. #535)

Pulse argues that the Court should find as a matter of law that the asserted patent claims are invalid for obviousness. Pulse further argues the jury's verdict that Pulse's accused products infringe the asserted claims that include a standoff element is not supported by the evidence because the accused products do not meet the standoff element's definition. Finally, Pulse argues no reasonable jury could find that Pulse induced infringement.

Halo responds that the Court should deny Pulse's Motion as to obviousness because Pulse failed to move for judgment as a matter of law on obviousness at the close of evidence. Alternatively, Halo argues this Court should adhere to its prior determination that

Halo's asserted claims are not invalid due to obviousness.  Halo also argues the Court should uphold its prior ruling that the evidence supports the jury's verdict on infringement of the standoff claims and induced infringement.  Halo argues that the jury's infringement findings on the standoff claims and on induced infringement are supported by substantial evidence in the record.

Federal Rule of Civil Procedure 50(a) allows a party to move for judgment as a matter of law "at any time before the case is submitted to the jury."  Under Rule 50(b), a party who has filed a motion under Rule 50(a) may file a renewed motion for judgment as a matter of law after judgment is entered.  Although this is a patent case, this Court applies the United States Court of Appeals for the Ninth Circuit's law in deciding a motion for judgment as a matter of law.  See SynQor, Inc. v. Artesyn Tech., Inc., 709 F.3d 1365, 1373 (Fed. Cir. 2013) (stating the Federal Circuit "reviews the grant or denial of a motion for [judgment as a matter of law] under the law of the regional circuit").

Courts "review a jury's verdict for substantial evidence in ruling on a properly made motion under Rule 50(b)."  E.E.O.C. v. Go Daddy Software, Inc., 581 F.3d 951, 961 (9th Cir. 2009).  "Substantial evidence is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion from the same evidence."  Wallace v. City of San Diego, 479 F.3d 616, 624 (9th Cir. 2007) (quotation omitted).  "While the court must review the entire evidentiary record, it must disregard all evidence favorable to the moving party that the jury is not required to believe."  Id.  " The evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in favor of that party."  Id.  "A district court may set aside a jury verdict and grant judgment as a matter of law only if, under the governing law, there can be but one reasonable conclusion as to the verdict."  MHC Fin. Ltd. P'ship v. City of San Rafael, 714 F.3d 1118, 1131-32 (9th Cir. 2013).

///

**A.  Obviousness**

Pulse argues that even assuming all contested facts are decided in Halo's favor, the prior art Pulse presented demonstrates by clear and convincing evidence that the asserted claims are invalid.  Pulse argues that all claim elements are present in the prior art.  Pulse further argues that it was an error to use a Pulse engineer's statement that he did not see how the prior art was relevant to Halo's invention as evidence that the prior art teaches away from the combination of elements that make up Halo's invention.  Pulse also contends the prior art Pulse presented at trial was not before the United States Patent and Trademark Office ("PTO"), and was different than the prior art that was before the PTO.  Pulse finally argues that Halo's secondary evidence of obviousness cannot overcome Pulse's prima facie evidence of obviousness.

Halo responds that Pulse did not move under Rule 50(a) for judgment as a matter of law on obviousness, and therefore the Court cannot entertain Pulse's Rule 50(b) Motion on obviousness.  Halo further argues that Pulse's Motion on obviousness actually is a motion for reconsideration of the Court's finding that the asserted patent claims are not invalid for obviousness.  Halo argues that the jury is presumed to have resolved all factual disputes in Halo's favor, and therefore the jury is presumed to have found that the standoff element was not present in the prior art, and that the Western Electric and Rockwell prior art Pulse presented at trial did not contain many of the claimed elements.  Halo also argues that the jury resolved in Halo's favor the disputes of whether the prior art taught away from Halo's claimed invention and whether the prior art not before the PTO was similar to the prior art before the PTO.  Halo finally argues that the underlying factual issues for the objective indicia of obviousness must be resolved in Halo's favor, and the objective indicia of obviousness show the asserted claims were not invalid for obviousness.

Pulse replies that the Ninth Circuit has adopted a liberal view of what constitutes a sufficient pre-verdict motion under Rule 50(a) and therefore the Court should treat the case

as though Pulse filed a pre-verdict motion.  Pulse further argues that Halo has not asserted it will be prejudiced by Pulse's failure to file a pre-verdict motion, and therefore the Court should entertain Pulse's post-verdict motion.

As this Court previously found, Pulse failed to file a pre-verdict Rule 50(a) Motion on obviousness, and therefore waived its right to challenge the jury's factual findings on obviousness for substantial evidence.  (Order (Doc. #522) at 4.)  The Court must presume that the jury resolved all factual disputes in Halo's favor, as the Court did in its previous Order that contained the Court's Findings of Fact and Conclusions of Law.  (Id.)  Even if the Court disregards Pulse's engineer's statement that he did not see why the Western Electric and Rockwell parts were relevant to Pulse's accused parts, Pulse still has not proven by clear and convincing evidence that the asserted claims are invalid for obviousness.  (Id. at 6.)  The Court reaffirms its previous Order which held that Pulse had not proven by clear and convincing evidence that the asserted patent claims are invalid for obviousness.  (Id. at 2-11.)  The Court therefore denies Pulse's Motion for Judgment as a Matter of Law on obviousness.

**B.  Infringement of the Asserted Claims with a "Standoff" Element**

Pulse argues that under the Court's construction of the "standoff" element, Halo failed to prove that the standoff limitation in Claim 7 of United States Patent No. 5,656,985 (the '985 Patent) and Claim 48 of United States Patent No. 6,344,785 (the '785 Patent) is met by any of the accused products.  Pulse argues that Halo's expert applied Halo's proposed construction of standoff which the Court rejected during claim construction. Pulse thus concludes no reasonable jury could find that the standoff limitation was present in the accused products because Halo's expert did not apply the correct construction and thus failed to provide evidence that the standoff limitation was present in Pulse's accused products.

///

1    Halo responds that the jury's finding that the accused products infringe the claims

2    which contain a standoff element is supported by substantial evidence, including Halo's

3    infringement expert's testimony.  Halo argues its infringement expert testified that he was

4    applying the Court's standoff construction and testified that each of the accused product

5    groups had an element which met the Court's standoff construction.

6    Pulse replies that even if Halo's expert occasionally applied the correct construction of

7    standoff, at other times Halo's expert applied an improper legal construction for standoff.

8    Pulse thus argues Halo's expert's contradictory testimony caused the jury to reach the

9    unreasonable and improper conclusion that Pulse's products infringe the standoff claims.

10   In its claim construction Order, the Court construed standoff to mean "a portion of the

11   package designed to rest in contact with the printed circuit board after mounting in order to

12   prevent the solder posts from contacting the printed circuit board."  (Order (Doc. #194)

13   at 20.)  At trial the Court instructed the jury of the Court's standoff construction.  (Jury

14   Instruction (Doc. #470) at 13.)  Halo's expert testified that he was applying the Court's

15   standoff construction.  (Jury Trial Tr. - Day 3 (Doc. #440) at 129.)  Halo's expert testified

16   that his interpretation of the Court's standoff construction was that the standoff does not

17   have to rest in contact with the circuit board upon mounting.  (Jury Trial Tr. - Day 4 (Doc.

18   #442) at 62-63.)

19   When addressing Pulse's infringement of the asserted patent claims that contain a

20   standoff element, Halo's expert testified that the end wall present in the H0022 part met the

21   standoff requirement of the '985 Patent Claim 7.  (Jury Trial Tr. - Day 3 at 129-32.)  The

22   expert identified the H0022 part's end wall as "I" on Plaintiff's Trial Exhibit B1.  (Id. at

23   129-30.)  Halo's expert also explained how the standoff element was satisfied by the H0022

24   part's end wall, stating:

25       Well, you can see -- we used the center cross section header because that gives us
         a good cross section view, a sideways view of what happens.  And if I am
26       inserting this into -- onto the surface of the printed circuit board or the pick and

6

1
2
3
4

place machine, as it presses down you'll notice that these gull wings actually come slightly lower than that end wall.  But as it presses down these gull wings can bend.  They're real flexible on the end wall.  And so it's designed so that if something comes into contact other than the gull wing leads, then it would be the end wall that nothing else in the package will come in contact with it.  So the contents of the package are protected by the safeguard.  That's why we call it a safeguard.

5    (Id. at 132.)  Halo's expert also more summarily testified the H0022 part's end wall fulfilled

6    the '785 Patent Claim 48's standoff element.  (Id. at 148-50.)

7         Halo's infringement expert further identified a standoff in each remaining

8    representative accused part and summarily testified that each of remaining representative

9    accused products met the standoff limitations for the '985 Patent Claim 7 and the '785

10   Patent Claim 48.  (Pl.'s Trial Exs. B1-B8; Jury Trial Tr. - Day 3 at 166-67 (H1260 product

11   group regarding '985 Patent Claim 7), 176-78 (H1260 product group regarding '785 Patent

12   Claim 48), 189-91 (H1174 product group regarding '985 Patent Claim 7), 201-04 (H1174

13   product group regarding '785 Patent Claim 48), 215-17 (H1305 product group regarding

14   '985 Patent Claim 7), 226-28 (H1305 product group regarding '785 Patent Claim 48), 233-34

15   (H0026 product group regarding '985 Patent Claim 7), 241-43 (H0026 product group

16   regarding '785 Patent Claim 48), 250 (H0019 product group regarding '985 Patent Claim

17   7), 257-59 (H0019 product group regarding '785 Patent Claim 48), 166-67 (H0009 product

18   group regarding '985 Patent Claim 7).)

19        On redirect, Halo's expert testified that the end walls in the accused representative

20   parts met the standoff element because:

21
22
23

that's the way it satisfies the function of preventing the solder posts from contacting the printed circuit board.  So if on insertion the leads flex sufficiently that they come in contact with other parts of the package, which they do on occasion, not on every time, then that would be prevented by the standoff.  That's its purpose and it's perfectly clear to me that it's designed to do that.

24   (Jury Trial Tr. - Day 4 at 128-29.)  Halo also presented at trial drawings of the

25   representative accused parts which show that the end walls of the accused representative

26   parts extend below the pins.  (Pl.'s Trial Exs. 165-69, 171, 174-79, 183-84, 197, 314.)

The Court must consider all of the evidence in the light most favorable to Halo and disregard any evidence unfavorable to Halo that the jury was not required to consider to find infringement of the claims which have standoff limitations.  Wallace, 479 F.3d at 624. The standoff construction provided to the jury in the jury instructions did not expressly require that the end wall must permanently rest upon the printed circuit board upon mounting the part.  Therefore, Halo's expert's opinion that under his interpretation of the Court's construction the representative accused parts contained a standoff provided adequate evidence for the jury to find Pulse's representative parts infringed the claims with a standoff element.

Therefore, substantial evidence supported the jury's verdict finding the accused parts infringed the claims which have a standoff element.  The Court therefore denies Pulse's Renewed Motion for Judgment as a Matter of Law on the issue of Pulse's infringement of the '985 the Patent Claim 7 and the '785 Patent Claim 48.

**C. Induced Infringement**

Pulse argues it had a good-faith belief that the asserted patents were invalid.  Pulse argues that the Court's finding of no objective willfulness as a matter of law supports Pulse's good-faith belief that the Halo patents were invalid.  Pulse thus concludes that it did not have knowledge that its actions induced infringement and it therefore did not induce infringement as a matter of law.

Halo responds that the jury was properly instructed that it could not find inducement if it found Pulse believed the patents were invalid, and therefore the jury's verdict that Pulse induced infringement shows the jury did not believe Pulse's witnesses, and found that Pulse subjectively did not believe the patents were invalid.  Halo further contends there was sufficient evidence presented at trial to support the jury's induced infringement findings. Halo also argues that the Court's finding that the objective prong of willfulness was not met has no impact on the jury's verdict regarding Pulse's subjective intent because the state of

mind of the infringer is not relevant to the objective prong for willfulness.

The only element of induced infringement at issue is whether Halo proved that Pulse had the requisite knowledge that its actions induced infringement.  For induced infringement, "the accused infringer must have knowingly and intentionally induced another party's direct infringement."  Merial Ltd. v. Cipla Ltd., 681 F.3d 1283, 1304 (Fed. Cir. 2012).  Thus, a finding of inducement requires both knowledge of the existence of the patent and "knowledge that the induced acts constitute patent infringement."  Commil USA, LLC v. Cisco Sys., Inc., --- F.3d ----, 2013 WL 3185535, at *4 (Fed. Cir. 2013) (citing Global-Tech Appliances, Inc. v. SEB S.A., 131 S.Ct. 2060, 2068 (2011)).  The knowledge requirement may be shown by actual knowledge or willful blindness.  Commil USA, 2013 WL 3185535, at *3.  "Circumstantial evidence can, of course, support a finding of actual knowledge or willful blindness."  Id.  Willful blindness is met if the infringer subjectively believed there was a high probability that its actions were inducing infringement by a third party and the infringer took deliberate actions to avoid learning of whether it was inducing infringement.  Global-Tech, 131 S.Ct. at 2071-72.

"[A] good-faith belief of invalidity is evidence that may negate the specific intent to encourage another's infringement, which is required for induced infringement."  Commil USA, 2013 WL 3185535, at *5.  However, evidence of a good-faith invalidity belief does not preclude a finding of induced infringement.  Id. at *6.

Here, taking the evidence in the light most favorable to Halo, substantial evidence supported the jury's finding, implied in its verdict, that Pulse had the requisite knowledge to be liable for induced infringement.  The jury was instructed that to find Pulse induced infringement, Pulse must "[h]ave known that the third party's acts it was causing were infringing."  (Jury Instructions (Doc. #470) at 17.)  The jury also was instructed that:

If Pulse did not know . . . the third party's acts it was causing were infringing, it
cannot be liable for inducement unless it actually believed that it was highly
probable its actions would encourage infringement by a third party of a patent

9

> and it took intentional acts to avoid learning the truth.  An act to avoid learning the truth is intentional if Pulse was presented with facts that it was particularly likely that Pulse was inducing infringement, and yet Pulse intentionally failed to investigate those facts.  It is not enough that Pulse was merely indifferent to the possibility that it might encourage infringement of a patent.
>
> If you find that Pulse was aware of the patents, but believed that the acts it encouraged did not infringe the patents, or that the patents were invalid, Pulse cannot be liable for inducement.

(Id.)  Therefore, the jury was instructed that if Pulse believed the patents were invalid, the jury could not find Pulse induced infringement.  The jury found Pulse induced infringement, and therefore must have found Pulse did not believe the patents were invalid. (Jury Verdict (Doc. #482) at 5-8.)

The evidence at trial supports the jury's finding.  A Pulse employee first learned of the Halo patents in 1998, and another Pulse employee learned of the Halo patents in 1999. (Jury Trial Tr. - Day 6 (Doc. #465) at 11-12.)  Pulse also cited the Halo patents as prior art in two Pulse patent applications in 1998 and 2001.  (Pl.'s Trial Ex. 151 (citing the '985 Patent); Pl.'s Trial Ex. 446 (citing the '785 Patent).)  In 2002, Pulse's president received a letter from Halo's attorney's about the Halo patents.  (Jury Trial Tr. - Day 6 (Doc. #465) at 12; Pl.'s Trial Ex. 91.)  Pulse's representative testified at trial that she was "not aware of any communication that happened or any actions that took place" after Pulse received the first 2002 letter, until Pulse received a second letter from Halo's attorneys about the Halo patents in 2002.  (Jury Trial Tr. - Day 6 (Doc. #465) at 12-13; Pl.'s Trial Ex. 92.)

After Pulse received the second letter, Pulse's president contacted a Pulse engineer who "did a cursory search of the patent and was skeptical as to its validity based on his knowledge of prior art that [Pulse] had and his remembering the part that [Pulse] had developed 30 years ago that he actually was personally involved in doing tests or something as a young engineer."  (Jury Trial Tr. - Day 6 (Doc. #465) at 13.)  The engineer that reviewed the Halo patents testified that he concluded, after approximately two hours of review and based on review of two of Pulse's prior art parts, that there was no novelty to

the Halo patents and that they were invalid.   (Id. at 179-80, 196.)  The engineer also

testified that he could not say for sure but he thought he communicated his analysis to his

direct supervisor or Pulse's president.  (Id. at 179-81.)  A Pulse employee also testified that

she was not aware of anyone at Pulse who made a conscious decision that it was

permissible to continue selling the open header surface mount transformer parts after

receiving the second letter in 2002.  (Id. at 12-13; Jury Trial Tr. - Day 8 (Doc. #467) at 8.)

Halo also presented evidence that Pulse continued to sell its accused product line from 2002

to 2007, which is when Halo filed the instant suit.  (Jury Trial Tr. - Day 6 at 202; Pl.'s Trial

Ex. 380C.)

Taking this evidence in the light most favorable to Halo, the evidence presented at trial

supports the jury's implicit finding that Pulse did not believe the Halo patents were invalid

and that Pulse had knowledge that the acts it was inducing were infringing.  Pulse gained

knowledge of the Halo patents as early as 1998, and again in 1999.  Pulse also named the

Halo patents in Pulse's patent applications, but did not conduct an analysis of whether

Pulse's accused products infringed the patents until sometime after receiving the second

2002 letter.  Furthermore, Pulse's engineer conducted a very limited analysis of the Halo

patents and Pulse could not establish that a decision maker at Pulse actually relied upon the

analysis in continuing to sell the accused products.  Therefore, the jury reasonably could

have found that Pulse did not believe the patents were invalid, knew its accused products

infringed, and knew its actions were inducing its customers to infringe.  See ePlus, Inc. v.

Lawson Software, Inc., 700 F.3d 509, 521 (Fed. Cir. 2012) (affirming the district court's

denial of judgment as a matter of law because the record contained sufficient evidence of

the infringer's intent and knowledge to allow a reasonable jury to conclude that the

infringer induced its customers to infringe).

The evidence also supports the finding that Pulse was willfully blind as to whether its

accused products infringed the Halo patents.  Pulse knew of the patents since 1998 and did

11

not conduct a limited infringement analysis until 2002.  Furthermore, the decision makers at Pulse did not make a decision based on that infringement analysis.  Therefore, the jury reasonably could have found that Pulse subjectively believed there was a high probability that its accused products infringed and that Pulse took deliberate actions to avoid learning of whether its accused products infringed.  The jury thus reasonably could have concluded that Pulse was willfully blind as to whether the actions it was inducing infringed the Halo patents.

The Court's holding that Halo did not prove the objective component of willfulness by clear and convincing evidence does not affect the jury's verdict finding by a preponderance of the evidence that Pulse had knowledge that its actions were inducing infringement. (Order (Doc. #522) at 23-26.)  First, willful infringement has a higher burden of proof than induced infringement.  Bard Peripheral Vascular, Inc. v. W.L. Gore & Assoc., Inc., 682 F.3d 1003, 1005 (Fed. Cir. 2012).  Second, the Court decided only the objective element of willful infringement and "[t]he state of mind of the accused infringer is not relevant to this objective inquiry."  In re Seagate Tech., LLC, 497 F.3d 1360, 1371 (Fed. Cir. 2007); (Order (Doc. #522) at 23-26).  Rather, the objective prong is "that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent."  Bard, 682 F.3d at 1005.  The objective prong "tends not to be met where an accused infringer relies on a reasonable defense to a charge of infringement."  Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc., 620 F.3d 1305, 1319 (Fed. Cir. 2010).  Thus, although Pulse may have reasonably relied on its invalidity defenses such that Halo did not prove by clear and convincing evidence that Pulse was objectively reckless, the jury consistently could find by a preponderance of the evidence that Pulse subjectively did not believe the patents were invalid.

The jury's verdict finding Pulse induced infringement was supported by substantial evidence.  The Court therefore denies Pulse's Renewed Motion for Judgment as a Matter of

Law as to induced infringement.

## II. MOTION FOR NEW TRIAL (DOC. #534)

Pulse argues multiple grounds exist which require that it receive a new trial.  First, Pulse argues the Court erred during claim construction in construing two claim terms.  Next, Pulse argues the Court erred in its summary judgment rulings, which precluded Pulse from presenting certain of its invalidity defenses at trial.  Pulse also argues the Court erred in allowing Halo to reference reexamination proceedings during trial.  Pulse further contends the Court erred by rejecting Pulse's proposed jury instruction on invalidity concerning prior art that was before the PTO.  Pulse further argues the Court erred in admitting the e-mails Halo used to impeach T. K. Luk.  Finally, Pulse argues the jury's determination of each issue that Pulse raised in its Renewed Motion for Judgment was against the clear weight of the evidence.

Halo responds that the Court carefully considered the arguments and evidence provided by the parties on each issue raised in Pulse's Motion, and the Court's prior rulings are consistent with the law.  Halo thus contends that the Court's previous rulings on the issues are proper and should not be disturbed.

Ninth Circuit law controls whether to grant a motion for new trial because a motion for new trial is a procedural issue not unique to patent law.  Union Carbide Chem. & Plastics Tech. Corp. v. Shell Oil Co., 308 F.3d 1167, 1182 (Fed. Cir. 2002).  Whether to grant a motion for new trial lies within the district court's discretion.  Shimko v. Guenther, 505 F.3d 987, 990 (9th Cir. 2007).  Under Federal Rule of Civil Procedure 59, the Court may "grant a new trial on all or some of the issues . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court."  The Ninth Circuit has instructed that "[t]he trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice."  Shimko, 505 F.3d at 993 (quotation omitted).

Furthermore, district courts are granted broad discretion in admitting evidence, and "[a] new trial is only warranted when an erroneous evidentiary ruling substantially prejudiced a party."  Harper v. City of L.A., 533 F.3d 1010, 1030 (9th Cir. 2008) (quotation omitted).  Substantial prejudice exists if it is more probable than not that the erroneous evidential ruling tainted the verdict.  Id.

**A. The Court's Claim Constructions**

Pulse argues the Court improperly held "electronic surface mount package" in the preamble of all of the asserted patent claims was not limiting.  Pulse argues that it did not oppose Halo's Motion in Limine No. 3 because of the Court's erroneous claim construction, and therefore Pulse was prejudiced by not being able to present evidence and prove at trial that the "electronic surface mount package" limitation is not met by each of the accused products.

Pulse also argues the Court improperly construed the term "contour element" for Pulse's United States Patent No. 6,116,963 (the '963 Patent) and that due to this erroneous construction Pulse stipulated to summary judgment of non-infringement on Pulse's counterclaim against Halo.  Thus, Pulse argues it was improperly prevented from presenting its counterclaim at trial.

Halo responds that Pulse has presented no new reason why Pulse's proposed constructions are correct and merely relies on its prior briefs.  Halo argues the Court's construction of these terms was correct, and the Court should adhere to its prior constructions.

The Court already has considered the parties' arguments regarding the construction for the disputed claim terms.  The Court did not err in holding the preamble phrase "electronic surface mount package" does not limit the Halo patent claims because "the claim describes a structurally complete invention in the claim body, and there was no express disclaimer in the prosecution history that limited the present invention" to Pulse's

14

proposed construction.  (Order (Doc. #194) at 13-16.)  The Court did not err in rejecting

Pulse's proposed construction of "contour element" as too broad to be sufficiently

descriptive and finding the contour element means "a raised or recessed feature that

physically contacts the bend of an electrical lead both before and after the modular plug is

inserted into the cavity."  (Id. at 12-13.)  The Court therefore denies Pulse's Motion for a

New Trial on the basis of the Court's claim constructions.

**B.  The Court's Summary Judgment Rulings**

Pulse argues the Court improperly granted summary judgment on Pulse's invalidity

claim under 35 U.S.C. § 102(b) by finding there was no genuine issue of material fact that

Halo's August 1994 sale of products embodying the claimed inventions were for

experimental purposes, rather than commercial purposes.  Pulse argues it at least should

have been permitted to present its § 102(b) defense to the jury.

Pulse also argues the Court erred in its summary judgment Order by modifying the

parties' stipulation regarding the accused products to take out the PE-64309 part.  Pulse

argues Halo made a voluntary and informed decision to accuse that part of infringement,

and it was not an error or mistake.  Pulse argues the Court's amendment improperly

precluded Pulse from being able to argue at trial that Halo's accusation that the part

infringed renders the asserted patent claims invalid as a matter of law.

Halo responds that there was no error in the pretrial rulings challenged by Pulse.  Halo

argues Pulse does not present any new arguments on these issues, and the Court's prior

rulings on these issues are proper and should be upheld.

The Court already has considered the parties' arguments regarding the Court's

summary judgment rulings.  As to Pulse's invalidity defense under § 102(b), the Court

previously found that Pulse presented no evidence creating a genuine issue of material fact

that Halo's August 1994 sale was for experimental purposes and not commercial purposes.

(Order (Doc. #300) at 25-30.)  The Court therefore granted summary judgment of no

invalidity based on the August 1994 sale, and Pulse was not improperly prejudiced by not being able to present evidence at trial of its invalidity defense under § 102(b).  (Id. at 30.)

As to the Court amending the parties' stipulation regarding the accused products to take out the PE-64309 part, the Court previously found it was in the interests of justice to strike Pulse's argument that Halo's allegations that the PE-64309 part infringes the Halo patents demonstrates that the Halo patents are invalid as a matter of law.  (Id. at 50.)  The Court also found it was in the interests of justice to remove the PE-64309 part from the accused product list.  (Id.)  The Court further found these rulings did not "unfairly prejudice Pulse because Pulse still will be able to argue that the PE-64309 reads on all of the Asserted Halo Claims and thus the Halo Patents are invalid."  (Id.)  The Court finds no error in its summary judgment rulings, and therefore denies Pulse's Motion for a New Trial based on the Court's summary judgment rulings.

**C.  Pulse's Proposed Jury Instruction on the Prior Art Before the PTO**

Pulse argues it was error for the Court not to include Pulse's proposed jury instruction regarding validity that "[p]rior art that differs from the prior art considered by the PTO may carry more weight than the prior art that was considered and may make Pulse's burden of showing that it is highly probable that a patent claim is invalid easier to sustain."  Pulse argues the Supreme Court's decision in Microsoft Corp. v. i4i Ltd. P'ship, 131 S.Ct. 2238 (2011), mandates this instruction.  Pulse further argues that the fact that the PTO did not consider key asserted prior art references was significant to Pulse proving invalidity and it was prejudicial error for the Court not to include its proposed instruction.

Halo responds that the Court's instruction on this issue was a compromise between what each of the parties requested and was fair and proper.  Halo also argues that the Supreme Court in Microsoft did not mandate Pulse's proposed construction, but rather stated that courts may instruct the jury as such, but that it was not required.  Halo contends the Court's instruction gave the admonitions suggested by the Supreme Court.  Halo finally

argues that the decision not to include the sentence Pulse offered would not have had any effect on the verdict given the evidence presented at trial and the instructions that were given, and therefore Pulse was not prejudiced.

Pulse replies that although the Court's instruction contains correct statements, it does not contain a complete statement of how the jury should evaluate the prior art that was not before the PTO. Pulse contends that its requested sentence was an accurate representation of a Supreme Court holding and therefore should have been included.

In Microsoft, the Supreme Court stated "that new evidence supporting an invalidity defense may carry more weight in an infringement action than evidence previously considered by the PTO." 131 S.Ct. at 2251 (quotation omitted). The Supreme Court further stated:

> if the PTO did not have all material facts before it, its considered judgment may lose significant force. And, concomitantly, the challenger's burden to persuade the jury of its invalidity defense by clear and convincing evidence may be easier to sustain. In this respect, although we have no occasion to endorse any particular formulation, we note that a jury instruction on the effect of new evidence can, and when requested, most often should be given. When warranted, the jury may be instructed to consider that it has heard evidence that the PTO had no opportunity to evaluate before granting the patent. When it is disputed whether the evidence presented to the jury differs from that evaluated by the PTO, the jury may be instructed to consider that question. In either case, the jury may be instructed to evaluate whether the evidence before it is materially new, and if so, to consider that fact when determining whether an invalidity defense has been proved by clear and convincing evidence.

Id. (internal citation omitted). Therefore, Microsoft does not require that Pulse's proposed instruction be given. Rather, in Microsoft the Supreme Court provided guidance as to how to instruct a jury concerning prior art not that was not before the PTO but which has been presented to the jury at trial.

Here, the parties disputed whether the prior art Pulse presented at trial materially differed from the prior art evaluated by the PTO. The Court instructed the jury that Pulse had introduced at trial prior art not considered by the PTO during examination of the Halo patents. (Jury Instructions (Doc. #470) at 19.) The Court further instructed the jury that

"Pulse contends that such prior art invalidates certain claims of the Halo patents." (Id.)
The Court finally instructed the jury that the jury "may take into account the fact that the
PTO did not consider the prior art when it issued the Halo patents" and "also may take into
account any differences or similarities between the prior art that the PTO did not consider
and the prior art that the PTO did consider." (Id.)  The Court's instruction incorporated the
Supreme Court's guidance set out in Microsoft that the jury should be alerted to the fact that
it has heard evidence that was not before the PTO and should consider whether the new
evidence is different from that which was before the PTO.

It was not a manifest injustice to not include Pulse's proposed jury instruction
regarding the prior art and a new trial is not warranted on this basis.  The Court therefore
denies Pulse's Motion for a New Trial due to the Court's rejection of Pulse's proposed jury
instruction regarding the prior art.

### D.  Reexamination Evidence Admitted at Trial

Pulse argues the Court erred in allowing evidence of the asserted patent's
reexamination, which resulted in jury confusion and prejudice to Pulse.  Pulse argues Halo
referenced the reexamination several times during trial in an attempt to mislead the jury to
believe that the Halo patents were entitled to a higher presumption of validity, which the
Federal Circuit has held is improper.  Pulse argues that Halo's references to the
reexamination led to jury confusion here, which is evidenced by the jury asking why Pulse
did not present evidence to the PTO during reexamination.

Halo responds that it was inevitable that some discussion of the reexamination would
occur because some of the asserted claims were added during reexamination and are
reflected on the reexamination certificates that came into evidence without Pulse objecting.
Halo further argues that Pulse made separate damages arguments on those claims which
came in during reexamination, so it would have been impossible to preclude mention of the
reexamination.  Halo also contends it was fair and relevant to allow Halo to tell the jury

what the PTO did consider because Pulse's obviousness argument throughout trial was that the PTO did not consider the prior art presented by Pulse at trial.  Halo finally argues that even if the Court's admission of evidence of the reexamination was error, it was not prejudicial because the jury heard balanced testimony about the reexamination process, what the PTO could consider, and what the PTO did consider.

Pulse replies that substantive discussion of the reexamination process was not inevitable because the jury could have been instructed that the claims in the reexamination certificate should be treated as though issued as original patent claims.  Pulse further argues that the fact that the PTO never considered the prior art presented by Pulse at trial could have been given to the jury without a detailed discussion of the reexamination process. Pulse further argues that although a patentee may be able to present to the jury the fact that a reexamination has been completed and may discuss the PTO's specific reasoning in issuing the reexamination certificate, Halo went beyond that and told the jury that reexaminations are unusual and three examiners considered the claims and found them valid.  Pulse argues the prejudice it suffered is demonstrated by the jury's question asking why Pulse did not submit its own evidence to the PTO during the reexamination.  Pulse submits this jury question prompted additional evidence including expert testimony, as well as attorney argument, which gave the jury the impression that the reexamination strengthened the asserted claims.

In the context of admitting evidence of non-final reexamination proceedings, the Federal Circuit has explained that "[i]t is generally true that evidence of non-final reexamination determinations is of little relevance and presents a risk of jury confusion." K-TEC, Inc. v. Vita-Mix Corp., 696 F.3d 1364, 1376 (Fed. Cir. 2012).  However, the Federal Circuit recognizes that "it is the province of the district court to weigh those interests and determine admissibility in each case, a decision about which the court has very broad discretion."  Id.  Thus, admitting evidence of a patent reexamination is governed by

the balancing test in Federal Rule of Evidence 403, that the court may exclude relevant evidence if its probative value is substantially outweighed by unfair prejudice, confusion, or potential to mislead the jury.  See K-TEC, 696 F.3d at 1376 (finding no abuse of discretion when the court applied Rule 403 and "the court explained the status of the reexamination proceedings to the jury and, if anything, cured any potential unfair prejudice to [the alleged infringer] by informing the jury that the PTO's consideration of [the prior art] in the reexaminations proceedings ha[d] really no value." (quotation omitted)); see also SynQor, Inc., 709 F.3d at 1380 (finding district court did not abuse its discretion by excluding evidence that before trial the PTO had granted reexamination and had issued first rejections of the asserted claims because the reexamination evidence would have been confusing and more prejudicial than probative); Callaway Golf Co. v. Acushnet Co., 576 F.3d 1331, 1342-43 (Fed. Cir. 2009) (similar finding).

Here, the Court did not err in allowing evidence of the PTO's reexamination of the Halo patents because the probative value of the evidence presented concerning the Halo patents' reexamination was not outweighed by the potential prejudice to Pulse.  In its brief regarding jury instructions, Pulse argued the Court should not allow Halo to present evidence that the asserted claims had survived reexamination because this could improperly suggest to the jury that the asserted claims are entitled to an extra presumption of validity. (Def.'s Br. in Support of Their Proposed Jury Instructions (Doc. #404) at 8-9.)  At the beginning of trial, before the jury was selected, the parties again raised the dispute over Halo referencing the reexamination during opening argument.  (Jury Selection - Day 1 (Doc. #433) at 5-7.)  Halo's counsel represented that he intended to state the patents went "through a reexamination process where issues about their validity were raised and considered and the Patent Office re-issued the patents after a year-and-a-half of study."  (Id. at 6.)  The Court stated it would allow Halo's counsel to state the facts in opening, as long as there was not argument about what the reexamination proved.  (Id. at 7.)  During opening

arguments, Halo's counsel stated the Halo patents "were examined when they were first issued and then reexamined in 2008." (Jury Trial Tr. - Day 1 (Doc. #434) at 54.)  Thus, during the opening, the probative value of Halo representing the uncontested facts of the case during opening was not outweighed by any prejudice to Pulse.

During the direct examination of Halo's first witness, one of the Halo patents' inventors, Halo's counsel brought up the fact that a different party which Halo had sued for infringement had asked the PTO to reexamine the Halo patents.  (Jury Trial Tr. - Day 2 (Doc. #435) at 95.)  Pulse objected to Halo's counsel asking the witness about his understanding of patent reexamination.  (Id.)  The Court overruled this objection, stating that the Court would allow the witness to give his understanding of the reexamination process and that this witness's testimony was "not to be confused by the jury as some kind of legal explanation."  (Id.)  The witness then testified that his understanding of the reexamination process was that it is "another review of a patent that's already been issued, but with other prior art that may or may not have been considered in the first review of the original patent."  (Id. at 96.)  The witness also testified that he was involved in the reexamination process for the Halo patents, that he met with the PTO examiner, provided information to the examiner, and that the process took about eighteen months.  (Id. at 97.)  The witness further testified that the result was "[t]hey came back and reaffirmed the validity of our patents and we were actually able to add some additional claims as well."  (Id.)  Thus, Halo's witness explained what happened upon reexamination and why there were additional claims added upon reexamination.  Additionally, the reexamination certificates which reflect the additional claims added were admitted at trial and given to the jury during deliberation.  (Pl.'s Trial Exs. 1 ('985 Patent Claim 16), 5 ('785 Patent Claims 40 and 48).)  The probative value of these facts combined with the Court's admonition to the jury to not construe the testimony as a legal explanation was not outweighed by any prejudice to Pulse.

On cross-examination of Halo's first witness, Pulse's counsel questioned the witness about the Halo patents' reexamination. (Jury Trial Tr. - Day 2 (Doc. #435) at 111-13, 155-57.) The witness testified that the Western Electric and Rockwell parts, which Pulse relied on during the trial as prior art that rendered the asserted patent claims obvious, were not submitted to the PTO during reexamination. (Id. at 112-13.) After Halo rested its case-in-chief and Pulse presented its first three witnesses, one of the jurors provided the Court with a note stating "[i]f Pulse had paperwork/drawings that would prove or help prove patents in question possible invalidity, why did they not provide documents to patent office when patent reviewed the second time for validity??" (Jury Notes (Doc. #447); Jury Trial Tr. - Day 6 (Doc. #465) at 283-92.)[1] To address this jury question, the Court instructed the jury that "the PTO is prohibited by law from considering prior art other than 'patents of printed publications,' . . . when evaluating the validity of a patent in reexaminiation" and that the "Rockwell, Western Electric, and Valor drawings and related documents Pulse has presented in this case are not 'patents or printed publications.'" (Jury Instructions (Doc. #470) at 21; Jury Trial Tr. - Day 9 (Doc. #468) at 11-16, 152-69.) "Jurors are presumed to have followed the instructions they were given." Finjan, Inc. v. Secure Computing Corp., 626 F.3d 1197, 1208-09 (Fed. Cir. 2010). The Court's instruction thus cured any potential unfair prejudice to Pulse. K-TEC, 696 F.3d at 1376.

Finally, concerning Halo's patent reexamination expert, Halo's counsel argued in closing argument that:

> Only one party brought you anyone to talk about the reexamination and that was Halo brought you Mr. Godici. What did he tell you? Well, he's a very expert guy. His name -- his name's on one of the patents in this case. And he told you that, you know, this reexamination process is pretty unusual. Most patents don't go through it, but when they do go through it it's performed by special examiners, people that are specially qualified to review it. And it's not just one

---

[1] The Jury Note at Doc. #447 is currently filed under seal. The Court finds no good cause for this jury note to remain under seal. The Court therefore orders that the Clerk's Office unseal Jury Note (Doc. #447).

1     examiner, it's three examiners.  And they must consider, must consider the
      secondary considerations, that is, all those factors that the Court laid out for you.

2

3  (Jury Trial Tr. - Day 10 (Doc.#479) at 220.)  However, the Court instructed the jury before

4  closing arguments, and each juror was given a copy of the jury instructions during

5  deliberation.  As explained previously, the instructions inform the jury to take into

6  consideration the prior art which was not before the PTO in determining whether the

7  asserted patent claims were invalid.  (Jury Instructions (Doc. #470) at 19.)   Also as

8  explained previously, the instructions stated that the prior art parts presented by Pulse could

9  not have been presented to the PTO upon reexamination.  (Id. at 21.)  Therefore, any

10  potential prejudice to Pulse from Halo's closing argument was cured by the jury

11  instructions.

12       Even if Pulse was prejudiced by Halo's counsel's statement during closing argument,

13  the Court previously found that Pulse did not prove by clear and convincing evidence that

14  the asserted patent claims were obvious.  (Order (Doc. #522) at 2-11.)  Therefore, Pulse has

15  not shown that Halo's closing argument more probably than not tainted the verdict on

16  obviousness such that a new trial is warranted.

17       In summary, the Court finds that the probative value of the reexamination evidence

18  presented at trial was not outweighed by the potential prejudice to Pulse.  Furthermore, the

19  Court's instructions during trial and at the close of evidence cured the potential prejudice to

20  Pulse.  Moreover, to the extent the Court's admission of the reexamination evidence was

21  erroneous, Pulse has not shown it was substantially prejudiced, or that it is more probable

22  than not that the erroneous evidential ruling tainted the verdict such that a new trial is

23  warranted.  The Court therefore denies Pulse's Motion for a New Trial on the basis of the

24  reexamination evidence presented at trial.

25  ///

26  ///

### E.  The T.K. Luk Emails and Pulse's Inventorship Defense

Pulse argues the Court erred in denying Pulse's motion to exclude two e-mails, marked Plaintiff's Trial Exhibits 413 and 414.  Pulse argues the e-mails were unauthenticated and unsponsored.  Pulse further argues that although Halo argued the e-mails could be used to show T.K. Luk's ("Luk") bias, Halo actually used the e-mails to impeach Luk, an unavailable witness.  Pulse contends it was prejudicial error under Federal Rules of Evidence 608(b) and 806 for the Court to allow the e-mails to be used to impeach.  Pulse also argues the Court erred in allowing physical copies of the e-mails to be sent to the jury room.  Pulse finally argues the jury's rejection of Pulse's improper inventorship defense is not supported by the evidence because Pulse proved by clear and convincing evidence that Halo failed to name Luk as an inventor.

Halo responds that Halo previously explained in responding to Pulse's initial Motion in Limine that the e-mails were authenticated by Luk's employer during his deposition in the case in which the e-mails arose.  Halo further contends that Pulse waived its authentication objection by not renewing it at trial.  Halo further argues that even if Pulse did not waive its authentication objection, there was evidence in the record to support the e-mails' authenticity.  Halo further argues that its argument that the e-mails showed bias was not a pretext to admit the e-mails for the purpose of showing untruthfulness because Halo prefaced its closing argument about the e-mails by referencing the Court's limiting instructions and saying the e-mails were only being used to show bias.  Halo further submits that the Court properly exercised its discretion in sending the Luk e-mails back to the jury and Pulse has failed to show prejudicial error that would warrant a new trial.  Halo finally argues that the jury's verdict finding Pulse did not prove its inventorship invalidity defense is supported by the weight of the evidence.

Pulse replies that it already raised its objection as to the authenticity of the e-mails in pre-trial motions and therefore did not waive its objection by not objecting at trial.  Pulse

further asserts that the Court's admission of the e-mails and sending copies back with the jury prejudiced Pulse's inventorship defense such that a new trial is warranted because whether Luk was an inventor came down to a credibility decision.

The Court already has found that Pulse did not prove by clear and convincing evidence, or even by a preponderance of the evidence, that Luk was an inventor of Halo's patented design.  (Order (Doc. #522) at 14-16.)  Although in its previous Order the Court recognized the e-mails as evidence of Luk's bias against Halo, even if the e-mails were not considered, Pulse has not proven by clear and convincing evidence that Luk was an inventor that should have been named because his testimony was not corroborated and the bulk of the evidence showed Luk was not an inventor.  (Id.)  Thus, even assuming it was error to admit the e-mails for the purpose of showing Luk's bias, or even for the purpose of impeaching Luk's character for truthfulness, the error did not substantially prejudice Pulse.  Harper, 533 F.3d at 1030.

Similarly, the jury's verdict finding Pulse had not proven its inventorship invalidity defense was not against the clear weight of the evidence because Pulse did not prove Luk was an inventor by clear and convincing evidence, or by a preponderance of the evidence. (Id.)  The Court therefore denies Pulse's Motion for a New Trial on the basis of the e-mails admitted to show Luk's bias and on the basis that the jury's verdict on Pulse's inventorship invalidity defense was against the weight of the evidence.

**F.  Pulse's Remaining Challenges to the Jury's Verdict**

Pulse argues the jury verdict was against the weight of the evidence in various respects.  First, Pulse argues the jury's finding that the asserted claims were not obvious is not supported because Pulse proved obviousness by clear and convincing evidence.  Pulse also argues the evidence showed its accused products do not have a standoff element and therefore do not satisfy the elements of the asserted claims.  Pulse finally argues there is insufficient evidence of induced infringement.

The Court, in its Findings of Fact and Conclusions of Law, and in deciding Pulse's Renewed Motion for Judgment as a Matter of Law, already has found Pulse had not proven by clear and convincing evidence that the asserted patent claims were obvious. (Order (Doc. #522) at 2-11.) The Court also has found in this Order that the jury's verdict finding Pulse infringed the claims with standoff elements and Pulse induced infringement was supported by substantial evidence, and the clear weight of the evidence does not mandate otherwise. Therefore, the Court denies Pulse's Motion for a New Trial on the basis that the jury's findings on obviousness, infringement of the claims with standoff elements, and induced infringement are against the weight of the evidence.

## III. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants Pulse Electronics, Inc. and Pulse Electronics Corporation's Renewed Motion for Judgment as a Matter of Law (Doc. #535) is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Defendants Pulse Electronics, Inc. and Pulse Electronics Corporation's Motion for a New Trial (Doc. #534) is hereby **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk's Office shall unseal Jury Note (Doc. #447).

**IT IS FURTHER ORDERED** that the stay on the execution of Judgment granted in the Court's Order dated July 16, 2013 (Doc. #551) is hereby lifted.


DATED: August 16, 2013

_____
PHILIP M. PRO
United States District Judge