UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| HALO ELECTRONICS, INC, | Case No. 2:07-cv-00331-APG-PAL |
|---|---|
| Plaintiff, | |
| v. | ORDER DENYING PLAINTIFF'S MOTION FOR ENHANCED DAMAGES |
| PULSE ELECTRONICS, INC., and PULSE ELECTRONICS, CORP., | (ECF Nos. 608, 614, 621, 629, 630, 631) |
| Defendants. | |

Plaintiff Halo Electronics, Inc. patented a new design for transformers used in consumer devices like laptops. Halo's design solved a problem that had plagued electronics manufactures for some time: transformers often cracked or warped when exposed to high temperatures. Halo's invention solved this problem by designing transformers that expand to better handle the heat.

Halo discovered that a much larger electronics manufacturer, defendant Pulse Electronics, Inc., was producing transformers incorporating features suspiciously similar to Halo's patented designs, so Halo sued Pulse for patent infringement. A jury found that Pulse had indeed infringed and awarded Halo $1.5 million. After trial, Halo asked the court to enhance its damages, claiming that Pulse infringed intentionally. But that request was denied because, at the time, enhanced patent damages required a finding that a defendant was both subjectively and objectively reckless. And Pulse had raised several reasonable defenses against Halo's claims.

Halo appealed the denial of its request for enhanced damages all the way to the Supreme Court of the United States. The High Court decided to change the standard for awarding enhanced damages in patent cases. The Court explained that the ability to enhance patent damages was meant to be a flexible tool committed to the discretion of trial courts, and that there was no basis to narrow courts' discretion by requiring a finding of both objective and subjective recklessness. The Court concluded that from now on, trial courts will have discretion to decide whether to award enhanced damages based on the totality of the circumstances, without the

limitation of making objective and subjective findings. The Court then remanded this case for further proceedings under this new standard.

Considering all of the evidence in the record, I find that enhanced damages are not warranted here. Enhanced damages remain an exceptional tool meant to punish patent "pirates"—companies that intentionally infringe with no regard for a plaintiff's rights.[1] The record reveals that Pulse is no pirate. Its defense strategies were questionable, which is reflected in the jury's verdict against it. But Pulse offers ample evidence that: (1) when it learned of Halo's patent Pulse investigated whether its products infringed, (2) Pulse pursued non-frivolous defenses at trial, and (3) Pulse had a basis to subjectively believe it was not infringing Halo's patent throughout this litigation and prior. I thus deny Halo's motion for enhanced damages.

## I. BACKGROUND

### A. *Halo designs and patents a new electronics component and Pulse apparently copies it*

Halo's design solved the heat sensitivity problem with existing transformers by creating an open transformer design that could expand in response to heat. A Pulse engineer became aware of Halo's patent in 1998 and, shortly after, Pulse began selling transformers that appeared to incorporate Halo's design.

Pulse is a much bigger company than Halo, which allowed Pulse to leverage the new technology quicker. Pulse incorporated the new transformer technology into its products. In 2002, Halo began contacting companies that were incorporating this expansion technology, proposing that they pay Halo for a license. Halo sent Pulse two letters asking that Pulse pay for a license to use Halo's technology, but Pulse never responded. Nowhere in these letters did Halo every say that Pulse was infringing.

---

[1] *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1926 (2016).

### B. *Pulse continues to sell products that incorporate Halo's design*

Pulse offers evidence that it continued selling products that incorporated Halo's design because, after researching Halo's patent, Pulse concluded that either Halo's patents were invalid or that Pulse's products did not infringe. Pulse's investigation included having one of its engineers analyze Halo's patent and commissioning two opinion letters, both of which concluded that either Halo's patent was invalid or that Pulse's products did not infringe it.

### C. *Halo sues Pulse for patent infringement and wins, but the court declines to award enhanced damages to Halo*

Halo brought this action against Pulse for patent infringement in 2007. Pulse responded with (1) a countersuit asserting that Halo infringed two of Pulse's patents, and (2) an action before the Patent and Trademark Office ("PTO") to challenge the validity of Halo's patents. Both efforts failed, with Pulse's patents ruled non-infringed and the PTO upholding the validity of Halo's patents.

Halo then proceeded to trial on its claims.[2] The jury found that (1) Pulse directly infringed Halo's patents and induced its customers to infringe, (2) Pulse's infringement was highly likely to have been willful, and (3) Halo's patents were valid.[3] Halo was awarded $1.5 million in damages.[4]

After trial, the court set aside the jury's willfulness finding. Applying the then-existing standard of *In re Seagate Technology, LLC*, the court concluded that Pulse had "presented enough evidence of obviousness" so that its defense was not objectively baseless, which precluded an award of enhanced damages.[5] The court explained that Pulse offered evidence at trial, including an infringement "expert's testimony that the prior art disclosed each element of the asserted patent claims, that it would have been obvious and predictable to combine and modify the prior

---

[2] ECF No. 522 at 25.
[3] *Id.* at 1.
[4] *Id.*
[5] *Id.* at 25.

art references to create the asserted patent claims, and that there were differences between the prior art before the PTO and the prior art Pulse introduced at trial."[6] Pulse also presented evidence "that the commercial success of the patented design was tied to litigation-driven licenses, that there was only a single instance of skepticism by one of Halo's potential customers, and that Pulse already had solved the problem of cracking due to exposure to high heat years before the Halo invention."[7] The court thus concluded that Pulse did not ignore an objectively high likelihood that it was infringing, as the then-controlling caselaw required.[8]

The Federal Circuit affirmed, agreeing with the district court that "Pulse did raise a substantial question as to the obviousness of the Halo patents."[9] The court reasoned that "Pulse presented evidence that the prior art disclosed each element of the asserted claims, that it would have been predictable to combine and modify the prior art to create the claimed electronic packages, and that there were differences between the prior art considered by the PTO and the prior art introduced at trial."[10]

C. *The U.S. Supreme Court changes the standard for enhanced damages and this case is remanded to apply the new standard*

The Supreme Court eventually vacated the district court and Federal Circuit's decisions, abrogating the then-existing standard for enhanced damages.[11] Under the prior *Seagate* test, a court could award enhanced damages for willful infringement only if it found that an infringer was both objectively and subjectively reckless.[12] The Supreme Court explained that this two-

---

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 769 F.3d 1371, 1382–83 (Fed. Cir. 2014), vacated and remanded, 136 S. Ct. 1923 (2016).

[10] *Id.*

[11] *Halo Elecs., Inc.*, 136 S. Ct. at 1923.

[12] *Id.*

prong test unduly prevented a trial court from awarding enhanced damages against a "wanton and malicious pirate who intentionally infringes another's patent."[13] "The existence of such a defense insulates the infringer from enhanced damages, even if he did not act on the basis of the defense or was even aware of it. Under that standard, someone who plunders a patent—infringing it without any reason to suppose his conduct is arguably defensible—can nevertheless escape any comeuppance . . . solely on the strength of his attorney's ingenuity."[14]

In short, the Supreme Court concluded that trial courts should have wider discretion to consider whether willfulness damages are appropriate on a case-by-case basis, considering the totality of the circumstances.[15] The Court remanded to the Federal Circuit to consider whether, with now-wider discretion, enhanced damages are appropriate in this case.

The Federal Circuit, in turn, remanded so that this court could make the enhanced-damages determination in the first instance. The panel explained that this court was to apply the new, less-restrictive standard for awarding enhanced damages.[16] It also noted that "the jury's unchallenged subjective willfulness finding [w]as one factor" that should be considered, as well as "what Pulse knew or had reason to know at the time of the infringement of the Halo patents."[17] But the court emphasized that these were but two facts that should be considered, and that, ultimately, whether enhanced damages are appropriate in this case is a matter committed to this court's discretion.[18]

---

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 831 F.3d 1369, 1381 (Fed. Cir. 2016).

[17] *Id.*

[18] *Id.*

## II. ANALYSIS

Halo presents three arguments: (1) Pulse cannot rely on two opinion letters to argue against enhanced damages because it never produced these letters at trial; (2) based on the record, Pulse's conduct was so malicious that it deserves to have enhanced damages levied against it; and (3) Halo is also entitled to attorney's fees.

*A. Whether Pulse can rely on its two opinion letters*

In responding to Halo's motion for enhanced damages, Pulse relies, in part, on two opinion letters it obtained in 1999 and 2003—during the time that it was infringing Halo's patent. These opinion letters concluded that Pulse's products did not infringe Halo's patent and that Halo's patent was invalid. They are thus powerful evidence that Pulse was not intentionally infringing Halo's patent.

Pulse notified Halo about these opinion letters early in the case, but Pulse did not disclose their contents because they were privileged and not yet relevant. Halo argues that Pulse's failure to fully disclose the contents of these opinions means that I may not consider them now.

In deciding whether to award enhanced damages, I must consider the totality of the circumstances to determine whether it is appropriate to punish Pulse for egregious conduct. The Supreme Court and Federal Circuit both instructed that I consider *all* the circumstances; they said nothing about restricting my review to the evidence produced at trial. And Halo offers no authority suggesting that I am confined to evidence produced in discovery or at trial when making this determination. Indeed, Pulse was not required to prove anything about its subjective beliefs before, so it makes sense that it waited until now to produce these opinions in their entirety.

Halo also argues that a scheduling order entered in this case required that any discovery "supporting an advice of counsel defense" was required to be produced long ago.[19] But Pulse is not relying on an advice of counsel defense to a willfulness finding; it is offering the opinion letters for the post-trial purposes of Halo's request for enhanced damages.

---

[19] ECF No. 154.

Halo finally argues the opinion letters should be stricken because they are irrelevant, but the cases it relies on miss the mark. Those cases concern whether opinion letters were properly submitted to the jury, not whether they were properly considered by a judge at the enhanced-damages stage.[20] For example, Halo contends that the opinion letters are irrelevant because there is not enough evidence that Pulse relied on them, citing to *Harris Corp v. Ericsson*. But the panel in that case held that the jury's willfulness finding was sufficiently supported by evidence, not that a judge was barred from considering the opinion letters at the enhanced-damages phase.[21] Indeed, the panel emphasized that if it were "sitting as triers of fact, [it] might not have come to the same conclusion" as the jury.[22]

Even if I could not consider the contents of these opinions, I could certainly consider the fact that Pulse obtained them and knew of them (because that, at least, was disclosed to Halo since the beginning of this case). And even if that is all I could consider, I would reach the same conclusion. I thus deny Halo's motion to strike.

> B. *Whether Pulse's conduct is so malicious that I should award exceptional damages against it*

"Section 284 of the Patent Act provides that, in a case of infringement, courts may increase the damages up to three times the amount found or assessed."[23] After the Supreme Court's recent decision in *Halo*, district courts have wide discretion to determine whether enhanced damages are appropriate. But although there is "no precise rule or formula" for awarding enhanced damages,[24] this "discretion should be exercised in light of the considerations

---

[20] *See, e.g., Harris Corp. v. Ericsson Inc.,* 417 F.3d 1241, 1259 (Fed. Cir. 2005) (analyzing opinion letters to decide whether jury's willfulness finding was sufficiently supported).

[21] *Id.*

[22] *Id.*

[23] *Halo Elecs., Inc.*, 136 S. Ct. at 1928 (quoting 35 U.S.C. § 284).

[24] *Id.* In deciding whether to enhance damages, some courts have relied on factors listed in *Read Corp. v. Portec, Inc.*, 970 F.2d 816 (Fed. Cir. 1992). But the Supreme Court and Federal Circuit have cautioned that there is no required set of factors to consider. So while those factors may be helpful in some cases (and I do consider them here), they are not dispositive. *See Sociedad Espanola de Electromedicina y Calidad, S.A. v. Blue Ridge X-Ray Co, Inc.,* 226 F. Supp. 3d 520, 532 (W.D.N.C. 2016) (declining to apply the *Read* factors as a dispositive test for enhanced damages); *see also Trustees of*

underlying the grant of that discretion."[25] Those considerations include that enhanced damages are "not to be meted out in a typical infringement case" and are instead reserved for patent "pirates" who intentionally or recklessly infringe.[26] Also important, the defendant's conduct should be "measured against [its] knowledge . . . at the time of the challenged conduct."[27] And objective reasonableness is not irrelevant under the new test, it is now just one factor to consider among the "totality of the circumstances."[28]

Finally, even a jury's finding of egregious or willful conduct does not require an award of enhanced damages: "courts should continue to take into account the particular circumstances of each case in deciding whether to award damages."[29] The Federal Circuit recently "emphasized the district court's discretion" in deciding whether enhanced damages are warranted, stating that "the question of enhanced damages . . . is one that must be left to the district court's discretion" and is not settled by a jury's findings.[30]

In the wake of *Halo*, district courts have been wary of awarding enhanced damages absent evidence of exceptionally malicious conduct. For example, there was extensive evidence at trial that a defendant knowingly and intentionally copied a plaintiff's patented technology, but a district court still declined to award enhanced damages.[31] The court explained that because there was evidence that the defendant investigated the plaintiff's patent and its engineer concluded its products were not infringing, the case was not so exceptional that enhanced damages were appropriate.[32]

---

*Boston Univ. v. Everlight Electronics Co.*, 212 F.3d 254, 257, 2016 WL 3976617, at *2 (D. Mass. July 22, 2016) ("[T]he touchstone for awarding enhanced damages after *Halo* is egregiousness.")

[25] *Id.*
[26] *Id.*
[27] *Id.*
[28] *WesternGeco L.L.C. v. ION Geophysical Corp.*, 837 F.3d 1358, 1362 (Fed. Cir. 2016).
[29] *Id.*
[30] *Id.* at 1362.
[31] *Sociedad Espanola*, 226 F. Supp. 3d at 532.
[32] *Id.*

1  Courts that have awarded enhanced damages have done so in exceptional cases based on
2  extensive evidence that a defendant acted in bad faith. For example, in *Stryker v. Simmer*,
3  enhanced damages were awarded because there was overwhelming evidence that the defendant
4  knew it was infringing and did so anyway.[33] The defendant's own engineers testified that they
5  were explicitly told to model their products on the plaintiff's patented design, and there was no
6  evidence that the defendant did anything to investigate whether it was infringing.[34]

7  The thrust of Halo's argument is that because a jury already determined Pulse's
8  infringement was willful, and given the evidence at trial suggesting that Pulse copied Halo's
9  technology from the start, enhanced damages are warranted. I disagree. Considering all of the
10 evidence submitted by the parties, I do not find that Pulse's infringement was so egregious and
11 unusual that enhanced damages are needed here. True, Pulse's defense strategies were
12 questionable (and the infringement verdict against it reflects that). But there is significant
13 evidence suggesting that at the relevant times when it infringed, Pulse believed that Halo's
14 patents were invalid or not infringed.

15 First, although the jury found that it was "highly probable" that Pulse acted willfully, this
16 is but one factor in my analysis. Halo suggests that rejecting its request for enhanced damages
17 would disregard the jury's findings. But not so. The Supreme Court has made clear that
18 enhanced damages are not automatic, even after a jury has found willfulness. Instead, I must
19 consider all of the circumstances and evidence to decide whether this is a "rare" case warranting
20 extraordinary punishment for a defendant. I consider the jury's finding as one factor among the
21 totality of evidence in the record.

22 Second, there is evidence that Pulse independently developed expanding transformer
23 designs similar to that disclosed in Halo's patent, which supports Pulse's assertion that it
24 subjectively believed that Halo's patent was invalid or that Pulse's products were noninfringing.
25 Halo submitted evidence suggesting that its invention was novel and filled a long-unfilled need.

---

[33] *Stryker Corp. v. Zimmer, Inc.*, 837 F.3d 1268 (Fed. Cir. 2016).
[34] *Id.*

But there is also evidence that Pulse created several similar transformer designs throughout the 1980s and 1990s.[35] Indeed, Pulse submitted drawings prepared by one of its engineers in 1997, which disclosed this open design.[36]

Third, Pulse obtained two legal opinions about the validity of Halo's patent—opinions that concluded that the patent was invalid. Pulse commissioned the first opinion in 1999, before Halo asked it to pay for a license. The opinion, prepared by a law firm, opined that in light of the prior art, a court would likely find "that each of the eight claims" of Halo's patent were invalid.[37] Pulse obtained the second opinion in 2003. This 200-page opinion concluded that a court would likely find that Pulse's products did not infringe Halo's products.[38] Pulse offers evidence that at least one of these opinions was given to Pulse's president, so the company knew of them at the time Pulse was infringing.[39]

Fourth, Pulse's engineer testified that he analyzed Halo's patent in 2002 and concluded that it was invalid.[40] This engineer had 30 years of experience in and knowledge of the relevant field, so it was reasonable for Pulse to rely on his opinion. He also testified that he told members of Pulse's management team about his conclusions, so they knew, too.[41]

Fifth, Halo contacted Pulse about paying for a license but never informed Pulse that it was infringing. Pulse offers evidence that its employees believed Halo's letter was a "sales pitch."[42] Indeed, Halo told Pulse it had "not yet reached any conclusive determination as to whether [Pulse's] products" were infringing Halo's patents. If Halo itself was not sure that Pulse's

---

[35] *See* ECF No. 465 (jury trial transcripts) at 32:5-7, 29:21-30:4, 30:11-19, 30:22-31:6.
[36] ECF No. 467 at 208:4-22, 230:2-24.
[37] ECF No. 613-2 at 36.
[38] ECF No. 613-3.
[39] ECF No. 613-5 at 3.
[40] ECF No. 465 at 13:5-9.
[41] ECF No. 465 at 179:18-180:12; 181:6-9.
[42] ECF No. 465 at 46:5-20.

products infringed Halo's own patents, it is hard to claim that Pulse subjectively knew it was infringing at that time.

Finally, I note that the Federal Circuit, after reviewing the evidence in the record, concluded that "Pulse did raise a substantial question as to the obviousness of the Halo patents," finding that "Pulse presented evidence that the prior art disclosed each element of the asserted claims, that it would have been predictable to combine and modify the prior art to create the claimed electronic packages, and that there were differences between the prior art considered by the PTO and the prior art introduced at trial."

Halo offers countervailing evidence, including that some of Pulse's employees may have been untruthful in depositions, that Pulse used its power in the electronics market to exploit its position, and that some of Pulse's witnesses made comments revealing that the company was not diligent in investigating Halo's patents. Halo also emphasizes the lack of affirmative evidence that Pulse relied on its opinion letters and its engineer's analysis. And I cannot ignore that Pulse's infringement went on for many years.

But given the totality of the evidence, I do not find that enhanced damages are warranted. Pulse submits evidence that it had a basis to believe that it was not infringing Halo's patent or that the patent was invalid during the relevant time periods when it was infringing. It also provides evidence that its management knew of these defenses. Although there is little affirmative evidence about the extent that Pulse relied on its opinion letters or early investigations, there is also no affirmative evidence that Pulse intentionally set out to infringe Halo's patent. And a few stray remarks from Pulse's witnesses is not enough to transform Pulse into the sort of "pirate" deserving of exceptional punishment. I thus deny Halo's motion for enhanced damages.

*C. Whether Halo is entitled to attorney's fees*

Hallo also asks for attorney's fees. The first problem is that its request is untimely. Halo had 14 days from the entry of judgment in 2013 to file its request for fees, and it chose not to do

so.[43] Halo's request is also deficient because it fails to itemize or describe the fees it requests,[44] and because it is outside the scope of the narrow grounds that this case was remanded on (a determination of whether enhanced damages is appropriate).

At any rate, I would reject Halo's request on the merits anyways. I may award attorney's fees in only "exceptional" cases.[45] As in deciding whether to award enhanced damages, I must consider the totality of the circumstances.[46] Halo argues for attorney's fees by largely relying on the arguments it makes for enhanced damages. But as I explain at length above, the totality of the evidence reveals that Pulse did not defend this case so unreasonably as to make it an exceptional case. I thus decline to award Halo attorney's fees.

III. **CONCLUSION**

IT IS THEREFORE ORDERED that the plaintiff's motion for enhanced damages **(ECF No. 608) is DENIED**.

IT IS FURTHER ORDERED that the defendants' motion to seal **(ECF No. 614) is GRANTED.**

IT IS FURTHER ORDERED that the plaintiff's motion to strike **(ECF No. 621) is DENIED.**

IT IS FURTHER ORDERED that the defendant's motion to strike **(ECF No. 629) is DENIED.**

IT IS FURTHER ORDERED that the plaintiff's motion to withdraw **(ECF No. 630) is GRANTED.**

IT IS FURTHER ORDERED that the plaintiff's motion for leave to files supplemental authority **(ECF No. 631) is GRANTED.**

---

[43] LR 54-14(a); Fed. R. Civ. P. 54(d)(2)(B); *see also* ECF No. 523 (final judgment).
[44] LR 54-14(b)(1).
[45] *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014).
[46] *Id.*

IT IS FURTHER ORDERED that the clerk of the court shall enter judgment accordingly and close this case.

Dated: September 6, 2017.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE